## JOHNSON, Respondent, *v.* SAMUEL DOPKINS and CHRISTIANA DOPKINS, Appellants.

The purchaser of a mortgage is subrogated to the rights of the mortgagee.

Defendant set up title in herself as assignee of the mortgagee, and as lessee of the mortgagor. The plaintiff claims as purchaser at sheriff's sale on a judgment against the mortgagor. The estate in controversy was leasehold, and the judgment of the plaintiff was obtained after the date of the lease : Held, that the plaintiff took but the equity of redemption of the mortgagor, subject to the lease of defendants; and held, that he had no right to demand possession of the lessee, till after the expiration of the lease; and could recover no higher rent than that fixed by the lease, up to the time he demanded possession, after the expiration of the lease.

No account was stated in the case, and the cause was remanded, that an account might be taken; and the court remarked, that if it shall appear by the above rule of computation, that the rents were insufficient to have paid the mortgage debt of the lessee at the time this suit was brought, then that it was premature, and must fail.

APPEAL from the Superior Court of San Francisco.

The plaintiff complained that he is the owner in fee simple,

and entitled to the possession of the building formerly known as the Pacific Hotel, and now called the Columbia Hotel, in the City of San Francisco ; and the lot on which it stands (describing it), and that defendants are in possession of said property, and unlawfully withhold possession from him.    And further shows, that on the 17th November, 1851, he recovered judgment in the District Court of the Fourth District, against one George W. Bradley, then the owner of the property, and issued an execution thereon to the sheriff of said county, who levied upon the said Columbia Hotel, and the said lot on which the same stands, and afterwards sold and conveyed the same to the plaintiff, who by reason thereof became and is now the owner thereof, and entitled to the possession, &c.    And further saith, that defendants are indebted to him $2000, for withholding the possession of the last-mentioned property from plaintiff, from the 5th January, 1852 ; and a further sum of $2000, for the rents, issues, and profits, of the said hotel and property, from the said 5th January, 1852, till the present time ; and prays that defendants be adjudged to surrender the possession, and to pay the damages for withholding, &c., and for the rents, &c.

The defendants answer, and deny plaintiff's ownership, his right to possession, the unlawful withholding of possession, and all indebtedness ; and show and aver that they are in lawful possession of said premises, and entitled thereto.    That on the 8th March, 1850, Christopher Russ, the owner, leased the said premises for the term of three years to the Tallman Mining and Trading Association, at a ground rent of $500 per annum ; that said association, on the 22d November, 1850, assigned said term to George W. Bradley, who made said improvements, first known as the Richelieu Hotel; that on the 26th December, 1850, said Bradley conveyed his term in the premises and the buildings thereon, by deed of defeasance or mortgage, to Jonathan Morse; that on the 30th April, 1851, Bradley leased the premises to Christiana Keys, now Dopkins, wife of Daniel Dopkins, defendant, for one year, to commence on the 1st May, 1851.    That on the 1st July, 1851, the said Christiana, then Christiana Keys, contracted with said Morse, for the purchase of his interest, and mortgage on the premises, she paying therefor

$2500, and said Morse on the 16th July, 1852, conveyed to said Christiana, then married to Dopkins, all his right, title, and interest, in the premises, including the buildings thereon and his mortgage, to the amount of $2500, and the interest accrued and accruing thereon.

And further show, that said Christiana possessed said premises lawfully, as tenant aforesaid, until she became owner by the contract and conveyance with said Morse, and from that time has possessed the same as mortgagee in possession; and that defendant has been since his marriage, and now is, in possession, in right of his wife.   That plaintiff has no other or better right than that obtained through Bradley, which is at most but an equity of redemption; and pray that plaintiff's bill be dismissed, &c.

The statement of the case as exhibited on the record shows, that the plaintiff gave in evidence the judgment and sale, as laid in his complaint, that Christopher Russ was owner of the premises, who on the 8th March, 1850, leased to the Tallman Mining Company, for three years, who assigned the lease to Bradley, who took possession of the premises, and was the owner of the buildings thereon, at the time of the assignment to him.   That after the sale in January, plaintiff demanded possession of defendants, or payment of rent: they refused to do either; and he demanded possession again after he received his deed in July, 1852; when defendants again refused, and claimed to be the owners of the property.   The plaintiff then showed them his deed from the sheriff; and that at the time of the sheriff's levy and sale, Bradley was in the hotel engaged in conducting the same, and that the rent was worth $300 a month.

The sheriff's book showed, that the sale was made subject to redemption, and that after the time for redemption had expired a deed was executed to plaintiff, under the sheriff's sale.   Plaintiff gave in evidence the sheriff's deed to him, dated 15th July, 1852.

Defendants here moved for a nonsuit, alleging irregularities in the deed; which the court overruled.

The defendants gave in evidence a mortgage, Bradley to Morse, 26th December, 1850; contract between Morse and Christiana Keys, July 1st, 1851; assignment 16th June, 1851,

from Morse to Christiana Keys, wife of Dopkins; conveyance from Morse to Christiana Keys, November 21st, 1851; lease from Bradley to Christiana Keys, 30th April, 1851.

Morse, for defendants, proved, that Bradley negotiated the contract between him and Mrs. Dopkins of July 1st, 1851; that both parties lived on the premises; that Bradley generally made the payments under the agreement; that Bradley also negotiated the agreement of 20th November, 1851 (for property sold by Mrs. Keys to Bradley), the proceeds of which $1200, had been paid to witness; that witness had been paid the $2500, mentioned in the agreement of July 1st, 1851; the endorsement is signed by Bradley; that the hotel was worth in rents the past year from 250 to 300 dollars per month. That witness held the mortgage and notes from Bradley to him, until June, 1852, and then assigned, and gave one of them up to Mrs. Keys, and still holds the mortgage and the other note, which remain due and unpaid. The endorsements on the contract of July, 1851, are signed by Bradley.

Bradley swore that he leased to Mrs. Keys, 30th April, 1851, and gave the lease in evidence; she kept the house on her own account. The rent went on only till the 1st July, 1851; from the time of the sale (1st July), witness only assisted. Witness went to Morse, and told him he would not reduce his debt unless he agreed to an arrangement, and Mrs. Keys said, she would buy if witness was willing; the agreement was then made between Morse and Mrs. Keys, of the 1st July, 1851; witness sold the furniture in the house to her, after she bought Morse out. She paid him $100 rent and board; she was to have the house on these conditions before she purchased. After July, witness was there nearly all the time, and was paid for his services.

The jury, by agreement of counsel, and upon a statement of questions, brought in a special verdict, and found as follows:—

1st. That the monthly rent or value of the hotel, from 1st April, 1851, to the present time was $300 per month.

2d. That the monthly rent of the cottages for the same time, including ground rent, was $150 per month.

3d. That the sale and transfer to Mrs. Keys was done by her in good faith, and with no intent to hinder, delay, or defraud the creditors of Bradley.

Upon the verdict so rendered, and the undisputed facts, the court found that the plaintiff was entitled to recover the possession of the premises in the complaint mentioned, and assessed damages for the detention, at the sum of $2000, and ordered judgment accordingly. Defendants appealed.

*Hastings* and *Morse,* for appellants.

*Hager,* for respondent.

The cause was argued at length, but mainly on the construction of papers in evidence, and some technicalities, not considered in the opinion of the court.

HEYDENFELDT, Justice, delivered the opinion of the court. WELLS, Justice, concurred.

The conveyance by Morse to Mrs. Keys, subrogated her to the rights which he held as mortgagee, and Bradley's consent did not invest her with any greater interest. The only error observable is in the computation of damages by the court below, and this results from not having an account taken between the parties.

The interest of Mrs. Keys was twofold.

1st. As mortgagee with a claim of twenty-five hundred dollars derived from Morse.

2d. As lessee of Bradley, the mortgagor from 30th April, 1851, to 30th April, 1852, at a rent of one hundred dollars a month.

By the purchase at sheriff's sale, Johnson obtained Bradley's equity of redemption subject to the lease to Mrs. Keys, and therefore had no right to demand possession of her until the expiration of the lease, and ought not to recover rent at a higher rate than that fixed by the lease, up to the time he demanded possession, after the expiration of the lease. And if it shall appear by this rule of computation that the rents were insufficient to have paid the mortgage debt of Mrs. Keys at the time this suit was brought, then it is premature, and must fail, unless the plaintiff offers to redeem, which he may do by the allowance of an amendment.

The judgment is reversed and the cause remanded, that an account may be taken upon the principles here indicated.